UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SCOTT C.,

                        Plaintiff,                    CASE NO. C19-0654-MAT

            v.

ANDREW M. SAUL,                              ORDER RE: SOCIAL SECURITY
Commissioner of Social Security,             DISABILITY APPEAL

                        Defendant.

       Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of

the Social Security Administration (Commissioner). The Commissioner denied plaintiff's

applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after

a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the

administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

## FACTS AND PROCEDURAL HISTORY

       Plaintiff was born on XXXX, 1970.[1] He has a limited education and previously worked as

a cook helper, storage laborer, and cosmetologist. (AR 977.)

       Plaintiff filed applications for DIB and SSI in 2013, alleging disability beginning May 1,

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

2009. (AR 78.) The applications were denied at the initial level and on reconsideration. (AR 76, 77, 92, 93.) Plaintiff's subsequent application for SSI in 2015 was consolidated with his 2013 applications. (AR 965.)

On August 17, 2015, ALJ Wayne N. Araki held a hearing, taking testimony from plaintiff and a vocational expert. (AR 38-75.) On January 21, 2016, the ALJ issued a decision finding plaintiff not disabled from May 1, 2009, through the date of the decision. (AR 16-31.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on March 29, 2017 (AR 1-4), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to the district court of the Eastern District of Washington, which reversed the decision and remanded the matter for further administrative proceedings. (AR 1057-72.)

On remand, the ALJ held a hearing on February 5, 2019, taking testimony from a vocational expert. (AR 991-99.) Plaintiff did not appear, and his attorney was unable to locate him. (AR 993.) On February 27, 2019, the ALJ issued a decision finding plaintiff not disabled from May 1, 2009, through the date of the decision. (AR 965-79.) Plaintiff timely appealed to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's

affective disorder, anxiety disorder, posttraumatic stress disorder (PTSD), personality disorder, and substance use disorder severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to work at all exertional levels in occupations with a specific vocational preparation (SVP) level of 1 or 2, performing tasks he can complete without assistance. He can have occasional interaction with the public and coworkers. With that assessment, the ALJ found plaintiff able to perform his past relevant work as a cook helper. The ALJ also made alternative findings at step five.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of a vocational expert, the ALJ found plaintiff capable of performing other jobs, such as work as a laundry worker, janitor, or packager.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v.*

*Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation of the evidence, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred by rejecting the opinions of seven medical sources and his own testimony in the 2015 hearing. He requests remand for an award of benefits or, in the alternative, for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

<u>Symptom Testimony</u>

Plaintiff testified at the 2015 hearing that his depression makes him want to stay in bed, makes it difficult to remember appointments, and makes him get overwhelmed at work and with daily life. AR 64. He responds to being overwhelmed by using drugs. AR 65. In a 2013 function report, plaintiff wrote that his depression and anxiety make it hard to get out of bed and he is always exhausted. AR 272. Drug use makes him "spun out and or depressed." AR 272.

An ALJ may "reject [a claimant's] testimony only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). Here, the ALJ found evidence of malingering based on two records. AR 971-72. A March 2013 Personality Assessment Inventory indicated that plaintiff "may not have answered in a completely forthright manner." AR 495. Plaintiff argues that no test can determine motivation, and malingering requires a deliberate attempt to deceive according to Social Security internal rules. Dkt. 10 at 19 (citing POMS DI 22510.006(D)). The test showed that plaintiff "consistently endorsed items that portray himself in an especially negative or pathological manner." AR 495. Possible explanations were "confusion or careless responding," a "cry for help," or "the possibility of malingering." AR 495. Regardless of the

underlying motivation, the test indicated that plaintiff's answers were not believable. This was sufficient for the ALJ to reject plaintiff's self-reports.

Plaintiff argues a "diagnosis" of malingering is required, citing *Garrison v. Colvin*, 759 F.3d 995, 1014-15. Dkt. 10 at 16. But *Garrison* only refers to "evidence" of malingering. 759 F.3d at 1014. Plaintiff also argues that the ALJ's recitation of plaintiff's allegations was incomplete. Dkt. 10 at 16-17; Dkt. 14 at 7-8. This argument fails. The ALJ noted that plaintiff "alleges being disabled due to chronic, daily, unstable depression, anxiety, and PTSD, with frequent hallucinations and suicidal ideation. His symptoms have also been complicated by his on-and-off substance abuse." AR 970. The ALJ addressed all of plaintiff's allegations.

The ALJ did not err by discounting plaintiff's symptom testimony based on affirmative evidence of malingering.

<u>Law of the Case</u>

The law of the case doctrine, which applies in social security cases, "generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case" unless "the evidence on remand is substantially different, … the controlling law has changed, or … applying the doctrine would be unjust." *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). Stated another way, "the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case." *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 281 (9th Cir.1996) (quotations omitted).

The Commissioner argues that "the law of the case doctrine does not apply to ALJs." Dkt. 13 at 3. This argument ignores the core of the law of the case doctrine. Under the doctrine, *this Court* will not reconsider an issue already decided by its sister district court in the same case.

The Commissioner also argues that the evidence was different on remand because the ALJ

considered additional medical evidence. Dkt. 13 at 3. The law of the case doctrine applies to an *issue* that has already been decided. The fact that there is new evidence in the case does not cast a blanket prohibition on applying the law of the case doctrine. For each issue raised, the Court will consider whether it was previously decided by the district court. Plaintiff contends the law of the case doctrine applies to the ALJ's rejection of opinions by Dr. Jackson, Dr. Barnard, and Dr. Cline.

Medical Opinions

The ALJ is responsible for assessing the medical evidence and resolving any conflicts or ambiguities in the record. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). When evidence reasonably supports either confirming or reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "'clear and convincing'" reasons. *Id.* (quoted source omitted). Where contradicted, the opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoted source omitted).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim v. Colvin,* 763 F.3d 1154, 1161 (9th Cir. 2014) (alteration in original); *see* 20 C.F.R. §§ 404.1502(a), (d), (e); 416.902(a), (i), (j). An ALJ may reject the opinion of a non-acceptable medical source, such as a therapist, by giving reasons germane to the opinion. *Id.*

ORDER
PAGE - 6

An ALJ must consider all opinions, including those from non-acceptable medical sources, which may in some cases even outweigh the opinions of acceptable medical sources. *See* 20 C.F.R. §§ 404.1527(f), 416.927(f).

A.     Caryn Jackson, M.D.

In 2013 Plaintiff's treating physician, Dr. Jackson, filled out a Physical Functional Evaluation, opining that Plaintiff's moderate to severe depression and fatigue/malaise caused marked limitations on his ability to perform basic work-related activities.[2]  AR 576.  She opined that he was limited to sedentary work.  AR 577.  The ALJ gave Dr. Jackson's opinion little weight on the grounds that it was "internally inconsistent" and contradicted by her own findings of normal range of motion and the medical record showing grossly normal gait.  AR 972-73.

An ALJ may discount medical opinions that conflict with the overall medical record. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (that opinions were "contradicted by other statements and assessments of [claimant's] medical conditions" and "conflict[ed] with the results of a consultative medical evaluation" were specific and legitimate reasons to discount the opinions).  Although the ALJ's statement that mental impairments "would not result in *any* physical restrictions" was more strongly worded than the record supports, his finding that Dr. Jackson's restriction to sedentary work was contradicted by the record was supported by substantial evidence.  AR 972 (emphasis added).  The form Dr. Jackson filled out defined sedentary work as follows: "Able to lift 10 pounds maximum and frequently lift or carry lightweight articles.  Able to walk or stand only for brief periods."  AR 577.  Nothing in the record shows that plaintiff's depression weakened his arm or leg muscles or in any way reduced his ability

---

[2] Dr. Jackson noted diagnoses of restless leg syndrome and history of drug abuse in remission, but opined they did not significantly interfere with basic work activities.  AR 576.

to lift, walk, or stand. *See, e.g.*, AR 1780 ("Fluid gait; upright and stable posture"). Dr. Jackson's own musculoskeletal examination was "essentially normal." AR 380. Without further evidence or explanation in the record, there is no basis for limitations to lifting 10 pounds maximum and walking or standing for only brief periods.

On plaintiff's first appeal, the Eastern District court determined that the "ALJ's finding that Dr. Jackson's opinion lacked support and was internally inconsistent is not supported by substantial evidence" because "Dr. Jackson provided a discussion of Plaintiff's symptoms including fatigue, … [and] further noted Plaintiff's fatigue and malaise were related to his depression." AR 1063 (citing AR 378-80). The Eastern District court rejected the ALJ's 2016 finding that Dr. Jackson "did not provide evidence to support her opinion." AR 26. This did not, however, dispose of the issue currently before this Court. Even if Dr. Jackson's opinion had some support in the record, in the 2019 opinion the ALJ found Dr. Jackson's opinion of extreme physical limitations was contradicted by the overall medical record. AR 972-73. Specifically, the ALJ rejected Dr. Jackson's opinion that plaintiff could only walk for brief periods because no evidence suggests plaintiff had any difficulty walking, and in fact providers observed normal gait. *See, e.g.*, AR 1780. The ALJ's finding is supported by substantial evidence. Conflict with the medical evidence was a specific and legitimate reason to discount Dr. Jackson's opinion.

Other reasons the ALJ provided were erroneous. The ALJ found Dr. Jackson's opinion undermined by providers' observations that plaintiff was "alert/oriented," in contrast to his complaints of fatigue. AR 972. Alert and oriented reflect awareness, not energy level, and thus do not contradict findings of fatigue. The ALJ also found plaintiff's "subjective fatigue complaints" unreliable. AR 972. But an ALJ does not provide sufficient reason for rejecting a doctor's opinion "by questioning the credibility of the patient's complaints where the doctor does

not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Comm'r of Soc. Sec. Admin*., 528 F.3d 1194, 1199–1200 (9th Cir. 2008). Dr. Jackson performed screening tests that showed "[m]oderately severe depression," and assessed the fatigue/malaise as related to the depression. AR 380, 378. There is no evidence that she relied on plaintiff's descriptions more heavily than her own clinical observations in forming her opinion. *See Ryan*, 528 F.3d at 1200. Overreliance on unreliable accounts of fatigue was not a specific and legitimate reason to discount Dr. Jackson's opinions.

These errors were harmless, however, because the ALJ provided the specific and legitimate reason that Dr. Jackson's opinion was contradicted by the medical evidence. The ALJ did not err by discounting Dr. Jackson's opinion.

B.     Philip Barnard, Ph.D.

Dr. Barnard examined plaintiff in 2013 and opined that his "depression would affect his ability to work on a daily basis to a moderate extent." AR 586. He opined marked limitations in communicating and performing effectively, maintaining appropriate behavior, and completing a normal work day and work week without interruptions from psychologically based symptoms. AR 587.

The ALJ gave little weight to Dr. Barnard's opinions for several reasons, including that it was a "temporary opinion" because Dr. Barnard opined the limitations would last a maximum of 10 months. AR 975; AR 588. Social Security disability can only be based on inability to work due to impairments that have "lasted or can be expected to last for a continuous period of not less than 12 months" or result in death. 20 C.F.R. §§ 404.1505(a), 416.905(a). The limitations opined by Dr. Barnard did not meet the durational requirement for Social Security disability. This was a specific and legitimate reason to reject those limitations. Plaintiff argues that the ALJ found severe

mental impairments since the May 2009 alleged onset date, and Dr. Barnard's opinions were more than four years later. Dkt. 10 at 11. Plaintiff's argument fails. The ALJ found severe impairments, but did not find that they caused limitations that rose to the level Dr. Barnard opined. Plaintiff's attempt to graft Dr. Barnard's opinions onto the ALJ's findings fails. That Dr. Barnard opined limitations lasting less than a year was a specific and legitimate reason to discount his opinions for purposes of determining Social Security disability.

The ALJ did not err by discounting Dr. Barnard's opinions.

C.      R.A. Cline, Psy.D.

Dr. Cline examined plaintiff in 2014 and opined that he had marked limitations in completing a normal work day and work week without interruptions from psychologically based symptoms. AR 614. The ALJ gave Dr. Cline's opinion little weight on the grounds that it was contradicted by the medical record and Dr. Cline's own clinical findings. AR 974-76. Plaintiff regularly had entirely or almost entirely normal mental status examinations. *See*, *e.g.*, AR 420, 549, 1832. Plaintiff identifies occasions where abnormalities such as distress, irritability, or suicidal ideation were observed. *See*, *e.g.*, AR 545, 1428, 1966. The records plaintiff cites often reflect unusual circumstances or manipulative behavior, rather than ongoing limitations as Dr. Cline opined. For example, plaintiff was in distress after a suicide attempt or while suffering from sepsis. AR 1943, 1901. He was irritable during suspected methamphetamine withdrawal. AR 1774. One counselor reported plaintiff "becomes angry with everyone who doesn't do what he wants." AR 1966. On one occasion plaintiff stated he was suicidal because he wanted housing. AR 1428. Viewing the record as a whole, the ALJ's interpretation that plaintiff's mental limitations were severe but not disabling was reasonable. The Court must uphold the ALJ's rational interpretation of the record. *Thomas*, 278 F.3d at 954. Conflict with the medical evidence

was a specific and legitimate reason to discount Dr. Cline's opinion.

Conflict with Dr. Cline's own clinical findings was another specific and legitimate reason to discount her opinions. The mental status examination showed entirely normal results except for suicidal ideation, slightly below average memory, and "variable" insight and judgment. AR 615-16. The ALJ permissibly found that such mild findings could not support such extreme limitations.

Plaintiff argues that under the law of the case, Dr. Cline's opinion is supported. Dkt. 10 at 13 (citing AR 1066-67). The Eastern District court stated that the 2016 ALJ decision "failed to describe what specific evidence contradicted the opinions of Dr. Cline." AR 1066. In his 2019 decision, however, the ALJ described the evidence in detail. *See* AR 971 (citing dozens of records). The Eastern District court found Dr. Cline's opinions supported by "some abnormalities" in the record. AR 1066. This does not settle the issue presently before this Court, however. Dr. Cline's opinions had some support in the record. But the ALJ's 2019 finding that Dr. Cline's opinion was contradicted by the overall medical evidence was supported by substantial evidence, and was a specific and legitimate reason to discount her opinion.

The ALJ did not err by discounting Dr. Cline's opinion.

D. <u>Phyllis N. Sanchez, Ph.D.</u>

Dr. Sanchez reviewed Dr. Cline's report and concurred with her opinion. AR 1822-23. The ALJ gave Dr. Sanchez's opinion little weight for the same reasons as Dr. Cline's. AR 976. These were specific and legitimate reasons. In addition, Dr. Sanchez endorsed a six-month duration the limitations were expected to persist. AR 1822. The ALJ permissibly discounted Dr. Sanchez's opinion because it did not meet the durational requirement for Social Security disability. AR 976. The ALJ did not err by discounting Dr. Sanchez's opinion.

/ / /

ORDER
PAGE - 11

E.    Sonya Starr, ARNP

In 2013, treating provider Ms. Starr opined that working would cause plaintiff's condition to deteriorate "mostly for psychological reasons" because he suffers from depression and drug addiction, which would cause him to miss work at least four days per month. AR 459. Ms. Starr also provided diagnoses of "low back pain/sciatica" and noted that plaintiff "states that after periods of standing/walking for prolonged intervals he needs to lie down for up to 60 min[utes. He] estimates this occurs 3-4 times daily." AR 458.

The ALJ gave Ms. Starr's opinion little weight because she was not an acceptable medical source, she relied in part on plaintiff's unreliable self-reports, and her opinion was contradicted by the medical record. AR 974-75.

To the extent Ms. Starr may have opined physical limitations, the ALJ rejected them because plaintiff had no severe medically determinable physical impairment. AR 975. Plaintiff attempts to conflate physical and mental limitations because a person who needs to lie down up to 60 minutes 3-4 times daily is unlikely to be productive. Dkt. 10 at 13. But Ms. Starr made clear that she "believe[d] this patient's disability to be of a psychiatric etiology and to be directly related to drug use and depression." AR 459. The physical limitation of needing to lie down daily was expressly plaintiff's self-report, not Ms. Starr's opinion. The ALJ permissibly disregarded it.

An ALJ must consider opinions from non-acceptable medical sources. *See* 20 C.F.R. §§ 404.1527(f), 416.927(f). The ALJ erred by discounting Ms. Starr's opinions because she was a non-acceptable medical source. The error was harmless, however, because the ALJ provided other reasons that were valid.

Because psychiatric evaluations necessarily depend in part on self-reports, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to

opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Clinical interviews and mental status evaluations "are objective measures and cannot be discounted as a 'self-report.'" *Id.* Plaintiff argues that his providers relied on his self-reports only in part, because Ms. Starr observed plaintiff was "paranoid" and had "poor insight" on the day of the opinion. AR 573. "If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim*, 763 F.3d at 1162 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)). In Ms. Starr's treatment note from the same day she provided her opinion, she wrote that plaintiff "would like [her] to fill out the physical portion [of the opinion form] in regard to his sciatica, although he does note that really, he feels his depression and drug addiction is his most disabling affliction." AR 570. Ms. Starr's opinion is a clear reflection of plaintiff's self-reports. In the treatment note, Ms. Starr administered a screening test that showed "severe depression" and observed plaintiff was paranoid and had poor insight, although the remainder of the psychiatric examination was normal, with normal affect and no agitation, anxiety, pressured speech, or suicidal ideation. AR 572, 573. Given that Ms. Starr's opinion very directly reflects plaintiff's self-reports, the ALJ supplied a germane reason by discounting her opinion as based heavily on plaintiff's self-reports.

In addition, the largely benign mental status findings in the medical record contradicted Ms. Starr's opinion of extreme limitations and total disability. The ALJ did not err by discounting Ms. Starr's opinion.

F.    Laurie Jones, LMFT

In 2013 plaintiff's therapist, Ms. Jones, opined that plaintiff was markedly limited in several areas, including maintaining extended concentration, maintaining punctual attendance, and

responding appropriately to supervision. AR 460-62. The ALJ gave Ms. Jones' opinion little weight for the same reasons as Ms. Starr's, and because Ms. Jones' opinion was brief, conclusory, and unsupported by medical findings. AR 974-75. As discussed above, the overall medical record shows regularly normal mental status findings, conflicting with Ms. Jones' opinion of extreme limitations. This was a germane reason to discount her opinion.

An ALJ need not accept a medical opinion that is "brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). However, where an ALJ has access to a treating source's records, the ALJ may not discount the source's medical opinion as conclusory simply because it is presented in check-box form. *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017). But here, plaintiff fails to identify any of Ms. Jones' treatment notes that could support her opinion of extreme limitations. In fact, her mental status examinations typically showed entirely normal results. AR 420, 424, 428, 432. The ALJ did not err by discounting Ms. Jones' opinions as conclusory and unsupported, as well as contradicted by the overall medical record.

G.      Amelia Rutter, ARNP

Treating provider Ms. Rutter opined in 2015 that plaintiff was "unlikely to successfully hold [a] job due to long standing severe depression." 8R 804. The ALJ gave her opinion little weight for the same reasons as the other medical opinions and because it was inconsistent with her treatment notes. AR 974, 976. The overall record of mostly normal mental status findings conflicts with Ms. Rutter's opinion of complete disability, and was a germane reason to discount her opinion. In addition, Ms. Rutter's treatment notes typically show completely normal mental status examination findings. AR 825, 832, 840. Conflict with her own findings was another germane reason to discount her opinion. The ALJ did not err by discounting Ms. Rutter's opinion.

## <u>CONCLUSION</u>

For the reasons set forth above, this matter is AFFIRMED.

DATED this <u>2nd</u> day of January, 2020.

Mary Alice Theiler
United States Magistrate Judge